IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

VIRGINIA WOODARD REED                                             PLAINTIFF


v.                                              NO. 15-5182


CAROLYN W. COLVIN, Commissioner
Social Security Administration                                   DEFENDANT


**MEMORANDUM OPINION**

Plaintiff, Virginia Woodard Reed, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) under the provisions of Title II of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  See 42 U.S.C. § 405(g).

I.      **Procedural Background:**

Plaintiff protectively filed her current application for DIB on January 22, 2013, alleging an inability to work since April 1, 2006, due to Rheumatoid arthritis, Type 2 Diabetes, thyroid problems, peripheral artery disease, breast cancer (stage 1), anemia, high blood pressure, and high cholesterol.  (Doc. 9, pp. 14, 67, 149). For DIB purposes, Plaintiff maintained insured status through December 31, 2011. (Doc. 9, p. 156).  An administrative video hearing was held on January 14, 2014, at which Plaintiff appeared with counsel and testified. (Doc. 9, pp. 32-66).

By written decision dated April 15, 2014, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Doc. 9, p. 16). Specifically, the ALJ found Plaintiff had the following severe impairments through her date last insured: inflammatory arthritis, osteoarthritis, and peripheral vascular disease. However, after reviewing all of the evidence presented, the ALJ determined that through her date last insured, Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Doc. 9, p. 18). The ALJ found that through her date last insured, Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) with the following restrictions: She is limited to occasional fingering, handling, climbing, balancing, crawling, kneeling, stooping and crouching.

(Doc. 9, p. 19). With the help of a vocational expert, the ALJ determined that prior to her date last insured, Plaintiff could perform her past relevant work as an elementary school teacher as actually and generally performed. (Doc. 9, p. 25).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on July 10, 2015. (Doc. 9, p. 5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 5). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 7, 8).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th

Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§ 423(d)(1)(A), 1382c (a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet

3

or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. See 20 C.F.R. § 404.1520. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 404.1520.

## III.    Discussion:

Plaintiff argues the following issues on appeal: 1) the ALJ erred in disregarding the opinion and finding of the primary care physician, Dr. Ann-Marie Magre; 2) the ALJ erred in failing to consider all of Plaintiff's impairments in combination; 3) the ALJ erred in his analysis and credibility findings in regard to Plaintiff's subjective complaints of pain; 4) the ALJ erred in finding Plaintiff maintained the RFC to perform her past relevant work as an elementary school teacher; and 5) the ALJ erred in finding that Plaintiff retained the RFC to perform a limited range of light work.[1]

### A.    Insured Status and Relevant Time Period:

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on December 31, 2011. Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of April 1, 2006, her alleged onset date

---

[1] The Court has reordered Plaintiff's arguments to correspond with the five-step analysis utilized by the Commissioner

of disability, through December 31, 2011, the last date she was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB she must prove that, on or before the expiration of her insured status she was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that the parties must focus their attention on claimant's condition at the time she last met insured status requirements).

### B.      Combination of Impairments:

Plaintiff argues that the ALJ erred in failing to consider all of the claimant's impairments in combination.

The ALJ stated that in determining Plaintiff's RFC prior to the expiration of her insured status, he considered "all of the claimant's impairments, including impairments that are not severe."  (Tr. 11).  The ALJ further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments through the date last insured. (Tr. 14).  Such language demonstrates the ALJ considered the combined effect of Plaintiff's impairments. Hajek v. Shalala, 30 F.3d 89, 92 (8th Cir. 1994).

### C.      Subjective Complaints and Credibility Analysis:

We now address the ALJ's assessment of Plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2) the

5

duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors.  In a Function Report dated February 26, 2013, well after the expiration of her insured status, Plaintiff indicated that she was able to take care of her personal needs, to do light house work, to prepare simple meals, to walk two miles with friends, to do paperwork, to take care of her cat, and to run errands. (Doc. 9, pp. 183-191).  Plaintiff also reported that she was able to play cards, go to sporting events, go out to dinner, travel, talk and share experiences with others.  At the January of 2014, administrative hearing, Plaintiff testified that she went on a family trip to Hawaii about three years ago, and was able to go on a trip abroad with her family in 2012, but indicated that she did not walk as much as others in her group. (Doc. 9, pp. 54-55).

With respect to Plaintiff's physical impairments, the ALJ found that prior to the expiration of her insured status, Plaintiff had severe inflammatory arthritis, osteoarthritis, and peripheral vascular disease.  With respect to Plaintiff's peripheral vascular disease, the ALJ noted that the medical evidence reveals that her angioplasty and stenting of the right external iliac artery in October of 2009, was successful.  A follow-up visit in March of 2010, revealed

Plaintiff was walking two and three miles a day. (Doc. 9, p. 513). At that time, Plaintiff was noted as walking with a normal gait and was able to stand without difficulty. Subsequent medical records fail to show that Plaintiff's treating cardiologist limited Plaintiff from performing activities within the determined RFC during the time period in question.

Plaintiff developed chronic anemia around October of 2010, and started treatment with Dr. Gregory Oakhill. In April of 2011, Plaintiff reported experiencing fatigue, and denied experiencing chest pain, palpitations, joint pain, or a decreased range of motion. (Doc. 9, pp. 742-743). Plaintiff was treated with IV Fusion and appeared to respond well to treatment. Subsequent records reveal that Dr. Oakhill indicated that Plaintiff was "fully active" and able to carry on all pre-disease activities without restrictions in August of 2011. (Doc. 9, p. 739). In February of 2012, after the expiration of Plaintiff's insured status, Dr. Oakhill opined that Plaintiff could not perform physically strenuous activity, but was able to carry out light and sedentary work (e.g. office work, light house work). (Doc. 9, p. 729).

The medical evidence also reveals that Plaintiff sought treatment for osteoarthritis and Rheumatoid arthritis during the time period in question, and that she experienced some relief with the use of medication. A review of the medical evidence from Dr. Thomas R. Dykman, reveals that Plaintiff often reported her Rheumatoid arthritis occurred intermittently to occasionally during the relevant time period. Treatment notes from Dr. Magre, Plaintiff's treating physician, reveal that Plaintiff denied joint pain and swelling and that she had a normal gait in March of 2010; that Plaintiff denied joint pain and had normal appearing extremities in June of 2010; and that Plaintiff denied joint pain, swelling and weakness and had a normal gait in April of 2011, and July of 2011. (Doc. 9, pp. 464, 469, 481, 484). Plaintiff was also seen

in December of 2011, for foot pain, and the evidence reveals Plaintiff responded well with the use of insoles, and later orthotics.  (Doc. 9, pp. 538, 543).

With regard to Plaintiff's alleged mental impairments, the record also fails to demonstrate that Plaintiff sought on-going and consistent treatment from a mental health professional during the relevant time period.  See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she was unable to engage in any gainful activity prior to the expiration of her insured status.  Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### D.      The ALJ's RFC Determination and Medical Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel,  245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

"The [social security] regulations provide that a treating physician's opinion ... will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'" Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir.2000) (citations omitted). An ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. Id. at 1013. Whether the weight accorded the treating physician's opinion by the ALJ is great or small, the ALJ must give good reasons for that weighting. Id. (citing 20 C.F.R. § 404.1527(d)(2))

After reviewing the entire record, the Court finds that Plaintiff's argument is without merit, and there was sufficient evidence for the ALJ to make an informed decision. In determining Plaintiff's RFC, the ALJ specifically discussed the relevant medical records, the medical opinions of treating, examining and non-examining medical professionals, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

With regard to the December 13, 2013, assessment completed by Dr. Magre, Plaintiff argues that the ALJ did not give proper weight to this opinion. A review of this assessment reveals that Dr. Magre opined Plaintiff could lift/carry no more than twenty pounds occasionally; and could sit, stand, and walk no more than three hours each, in an eight-hour work day. (Doc. 9, p. 832). Dr. Magre also opined that Plaintiff's arthritis significantly limited

9

Case 5:15-cv-05182-ELW   Document 10    Filed 08/05/16   Page 10 of 12 PageID #: 899

joint manipulation.  In giving Dr. Magre's opinion partial weight, the ALJ agreed with the opinion that Plaintiff could do light work.  However, the ALJ also found that Dr. Magre's opinion included new impairments or a deterioration of Plaintiff's impairments that occurred after the expiration of Plaintiff's insured status.  In support of this, the ALJ references the letter Dr. Magre wrote dated December 18, 2013, wherein, Dr. Magre states that Plaintiff's clinical picture had deteriorated a bit in the last year.  (Doc. 9, p. 836).  In writing this letter, Dr. Magre indicated that after Plaintiff's diagnosis of breast cancer, which occurred after the expiration of her insured status, Plaintiff was not able to take the medication for her Rheumatoid arthritis which caused an escalation of Plaintiff's arthritic symptoms.  After reviewing the record as a whole, the Court finds that the ALJ properly analyzed Dr. Magre's opinion and discussed the basis for giving Dr. Marge's opinion partial weight when determining Plaintiff's RFC.

The record also reveals that Dr. Oakhill indicated that Plaintiff could resume to pre-disease activities without restrictions, and as noted above in February of 2012, after her insured status had expired, indicated Plaintiff could do light to sedentary work.  Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination for the relevant time period.

### E.    Past Relevant Work:

Plaintiff has the initial burden of proving that she suffers from a medically determinable impairment which precludes the performance of past work.  Kirby v. Sullivan, 923 F.2d 1323, 1326 (8th Cir. 1991).  Only after the claimant establishes that a disability precludes the performance of past relevant work will the burden shift to the Commissioner to prove that the claimant can perform other work.  Pickner v. Sullivan, 985 F.2d 401, 403 (8th Cir. 1993).

According to the Commissioner's interpretation of past relevant work, a claimant will

not be found to be disabled if she retains the RFC to perform:

> 1. The actual functional demands and job duties of a
> particular past relevant job; *or*
>
> 2. The functional demands and job duties of the
> occupation as generally required by employers
> throughout the national economy.

20 C.F.R. §§ 404.1520(e); S.S.R. 82-61 (1982); Martin v. Sullivan, 901 F.2d 650, 653 (8th Cir.

1990) (expressly approving the two part test from S.S.R. 82-61).

The Court notes in this case the ALJ relied upon the testimony of a vocational expert,

who after listening to the ALJ's proposed hypothetical question which included the limitations

addressed in the RFC determination discussed above, testified that the hypothetical individual

would have been able to perform Plaintiff's past relevant work prior to the expiration of her

insured status.  See Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("The testimony of a

vocational expert is relevant at steps four and five of the Commissioner's sequential analysis,

when the question becomes whether a claimant with a severe impairment has the residual

functional capacity to do past relevant work or other work") (citations omitted). Accordingly,

the Court finds substantial evidence to support the ALJ's finding that prior to her date last

insured, Plaintiff could perform her past relevant work as an elementary school teacher as

actually and generally performed.

## IV.   Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial

evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision

11

should be affirmed.  The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 8th day of August, 2016.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE